**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **No.** |
| **v.** | **VIOLATION:** |
| **DELECIA LYONS,** | **18 U.S.C. § 1957 (Money Laundering)** |
| **Defendant.** | **FORFEITURE:** **18 U.S.C. § 982(a)(1),** **28 U.S.C. § 2461(c), and** **21 U.S.C. § 853(p)** |

**INFORMATION**

The United States Attorney charges that,

**COUNT ONE**
**(Laundering of Monetary Instruments)**

At all times material herein:

1. Defendant DELECIA LYONS resided in the District of Columbia.

2. LYONS opened and controlled the following bank accounts: TD Bank account ending in 1346; TD Bank account ending in 8120; Wells Fargo bank account ending in 3946; two Woodforest bank checking accounts and a Woodforest savings account.

3. In approximately November 2019, LYONS received a message from "Ricky" on Instagram who told her that she could make money by working with him.  The plan was that "Ricky" would send money to bank accounts that LYONS controlled; LYONS would withdraw those funds and deposit them into other accounts at the direction of "Ricky." After the initial contact with "Ricky" over Instagram, LYONS communicated with Ricky through Whatsapp messages; LYONS never spoke to Ricky on a call and LYONS never met Ricky in person.

4.      Between November 2019 and some point in 2020, at Ricky's direction, LYONS deposited the majority of the funds in Bitcoin ATMs, sent funds to other people identified by Ricky, and/or purchased Apple products and shipped them to addresses provided by Ricky.

5.      At some point during the scheme, Ricky made threatening statements about LYONS and her children, and sent LYONS pictures of her children.

6.      "Ricky" stopped communicating with LYONS at some point during 2020.

7.      In or about 2021, LYONS received an email from "Kenneth", who said that he was in the same organization as Ricky.  Kenneth said that Ricky was on the run and owed money to Kenneth.  Kenneth told LYONS that they knew she had worked with Ricky and that LYONS needed to continue the same scheme in order to pay off Ricky's debt.  Kenneth also made threatening statements about LYONS and her children.

8.      Thereafter, LYONS received checks from Kenneth, which she deposited, at Kenneth's direction, into bank accounts Kenneth had instructed her to open. Pursuant to Kenneth's instructions, LYONS used the funds to buy Bitcoin. As with Ricky, LYONS was permitted to keep a relatively small portion of the money that was sent to her for her own personal use.

9.      Kenneth stopped contacting Lyons at some point in 2022 after LYONS reported to Kenneth that she had been contacted by a police detective in Massachusetts regarding withdrawals she made from one of her accounts.

10.      Over the course of her transactions with Ricky and Kenneth, LYONS received approximately $2.3 million from them, and retained for her own use approximately $250,000. LYONS admits that the proceeds she personally obtained as a result of her criminal activity described above have been dissipated by her and cannot be located upon the exercise of due

diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed

11.     LYONS did not know the specific criminal offense(s) from which the funds transferred to her by Ricky and Kenneth were proceeds. However, LYONS knew that those funds constituted, or were derived from, proceeds obtained from a criminal offense.

12.     The monetary transactions in which LYONS engaged at the direction of Ricky or Kenneth included numerous transactions of a value greater than $10,000. For example, in or about early February 2022, LYONS received a check dated January 30, 2022, in the amount of $50,000 which she deposited in a bank account in her name; she thereafter transferred the majority of those funds in one of the manners described above, as directed by Kenneth.

**(Laundering of Monetary Instruments, in violation of 18 U.S.C. § 1957)**

**<u>FORFEITURE ALLEGATION</u>**

7.     Upon conviction of the offense alleged in Count One of this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 2461(c).  The United States will also seek a forfeiture money judgment against the defendant in an amount equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to this offense.

8.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property that cannot be divided without

difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the

value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to 18,U.S.C. § 982(a)(1),
28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p))**

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    *David B. Deitch*
_____
DAVID B. DEITCH (VA Bar No. 74818)
Assistant United States Attorney
Fraud, Public Corruption & Civil Rights Section
555 Fourth Street, NW
Washington, D.C.  20530
Office: (202) 252-7796
Email: david.deitch@usdoj.gov

March 27, 2026

4